The next case this afternoon is 525-0511. Shops at St. Clair CMBS, LLC v. Wasabi Sushi Bar Seven, LLC, etc., et al. Thank you, Your Honor. Thank you, Your Honor. May it please the Court, Mr. Coyer. Steve Walsh appearing for the Wasabi Parties, who are the appellants in this case. Your Honor, obviously, we've laid out much of the issues and the discussion in the briefs, but I do want to hit on some points here. There are two issues here. Number one, there's a problem with the finding of fact that the circuit court made, and that is finding a leak where none existed. Number two, there's a problem with contract interpretation, which the Court did not address sufficiently in its decision. What's the standard of review for both of those issues? Your Honor, the Court is required to give deference to the Court's conclusions as to matters of fact, but as to the contract interpretation, I believe it's subject to de novo review by this Court. And, Your Honor, deference as to findings of fact doesn't apply here, where the conclusion is that the conclusion the Court reached does not comport with the evidence that was adduced at trial. Number one, I want to focus on the fact of the magnitude of the issue that the Court considered. 800,000 gallons of water. 800,000 gallons of water. Over what period of time? We don't know. We don't know, Your Honor. But there was no evidence of it, and the meter was still running. The meter was still running. Plaintiff's experts found no evidence of a leak. The plaintiff's representative found no evidence of a leak. My client's representative said the place was bone dry. What the Court did, it relied on the speculation of the plaintiff's expert, Mr. Summers, who said, well, that must have been it. No, it's the plaintiff's obligation to prove a breach in an obligation of the contract. It did not do so. And in fact, Mr. Summers, the plaintiff's expert, testified that such a leak would leave evidence somewhere. And he found none. In fact, he continued to look, and the plaintiff instructed him, the plaintiff's representative instructed him to stop looking, stop excavating. The bottom line is there's no evidence, none before the Court, other than Mr. Summers, the plaintiff's expert's speculation that that's it. There's no evidence before the Court that the plaintiff put on. You don't consider that when they capped off the line of the meter, it stopped spinning? I forget exactly where they capped off the line, but they capped it off on the shop side of the and it stopped spinning, so clearly there was a leak somewhere. Well, we don't know. Was it a defective meter? There's no evidence before the Court whether or not the meter was defective or whether there was an error at the meter. Number two, they capped the line, but where did they cap it? Where was it capped? And again, that goes to contract interpretation. Whose responsibility was it under the terms of the contract? You know, I understand they capped it and the meter stopped running. But once again, that is assuming that the meter was not defective. Again, there's no evidence of 800,000 gallons of water, none. Again, Mr. Summers testified, well, it must be attributable to. It must be attributable to a leak. That was speculation, and that's all there was before the Court was speculation that there was a leak that my clients were responsible for. And again, beyond the issues of fact, dear honors, there is a question of contract interpretation which is subject to de novo review. The contract uses two terms. In Section 6.1 and Section 1.2 of the lease, it refers to, quote, the term pipes. Admittedly, Section 6.2 refers to the term plumbing, but obviously the parties in choosing those terms in this document ascribed different meanings to them. One did not subsume the other. Otherwise, there would be no reason to use two terms. And again, the reliance on the Plumbing Licensure Act is, I would submit to the Court a red herring. Number one, it has nothing, it has to do with licensure and who is authorized under Illinois law to work on these components. But it doesn't say, well, this supersedes or primes any terms that parties use in their respective agreements. It's a licensure act. It says who has authority to do this. But the parties here chose two different terms, pipes and plumbing. There's a reason for doing so. The parties chose those terms, and I would submit that the Court needs to respect the parties' choice of those terms. And the licensure act is a red herring. Again, in Section 1.2 of the lease, it specifically says it was accepted and reserved to the landlord the right to install, maintain, use, repair, and replace pipes, ductwork, conduit, utility lines, and wires in or beneath the floor slab. I believe the plaintiffs have argued, well, that's a reservation. It doesn't mean that it's their responsibility. The reservation would be meaningless if that foisted upon the tenant the responsibility to replace the pipes beneath the slab. Again, these are pipes beneath the slab, and these are the terms the parties chose. Does Section 6.2 of the lease Section 6.2 assign repair responsibility to the tenant for all components exclusively serving the leased premises, whether located within or without the leased premises? And if that is an accurate statement, how do you distinguish what's within and without the leased premises that we're referring to under the slab? Understood, Your Honor. I'd like your thoughts on that. Understood, Your Honor. Well, there's a laundry list there of things that the tenant is responsible for. But going back to 6.1, there's another laundry list there that specifically refers to pipes and plumbing. Section 6.2 does not refer to pipes. Again, Your Honor, it's clear to me that the parties chose to leave responsibility with the landlord for infrastructure. Water pipes servicing the building would be part of the infrastructure. Okay, and I understand that. So let me stop you there. Yes, Your Honor. I don't know whether we had an ongoing flowing conversation. Yes, Your Honor. With regard to 6.2 that says for all components exclusively serving the leased premises, what is your thoughts on what are all components, if not including the plumbing? I would submit to the court that there's a distinction between components such as, for example, air conditioning. Let's assume there's a restroom in my restaurant, in Wasabi's restaurant, and the toilet is busted, all right? That is a component. It's my responsibility to fix it, all right? But that is not in the… So you're talking about the actual fixture, the toilet fixture? Yes, the plumbing fixtures. So if the supply lines to that fixture are damaged, you're suggesting that that would be the landlord's responsibility. But then I bring it back to 6.2. It says all components, however we're going to define components, serving the leased premises, whether located within or without the leased premises. So components that would be outside of the leased premises wouldn't, I mean, clearly Wasabi's not going to have a toilet outside of their premises, but they're going to have some component that is serving those fixtures on their property that comes from outside of the leased property. Understood, Your Honor. Understood. I understand the point Your Honor is making. Perhaps there's a separate electrical line outside the premises that's serving the premises. I would have responsibility to fix that. But that's not necessarily part of the infrastructure of the building. The pipes, subsurface pipes, are part of the infrastructure. If we take that to its logical conclusion, all right, the tenant, in this case Wasabi, would be responsible for possibly demolishing parts of the premises to fix it. If they were responsible for infrastructure such as piping that was installed and that they have nothing to do with. They didn't install it. If they were to have a sub pump or a lift station that is subgrade and it is serviced by electrical and the electrical wires malfunction or something happens, they would have to excavate or demolish some portion of, say, the slab to get to the underlayment. You're saying the electrical would be their responsibility. Isn't this the same with plumbing that is feeding under the slab to get to the fixture? I would submit it's not, Your Honor, because we had nothing to do with that plumbing. Those pipes, let me put it that way. Sure. We had nothing to do with that. That was there. We didn't install it. I thought Wasabi had, when they combined two leases, they had a new pipe run to service the new, exclusively the Wasabi shops. No, they joined two, which was above grade, above the surface. They joined two. But that's not where the leak was. The leak was obviously subsurface. If there was a leak, it would have been subsurface because they demolished the floor and found nothing. But obviously the landlord, in this case shops at St. Clair, assumed that this was a subsurface problem. Otherwise, they would have been demolishing the floor and the premises. Your Honor, I'm not going to beat a dead horse. We've laid it out in the brief. I'm not going to belabor the court any longer, but you understand where we're coming from. Number one, there's a question of fact here. I submit that the court erred and did make a manifest error because it based its decision on speculation as to the existence of a leak. Number two, it erred in its assessment of the terms of the contract. Thank you, Your Honor. Your Honor, in the police brief, they argued that you didn't argue the defective meter at trial, that possibility, and that you can't now argue that today because you didn't raise it at the trial level. Well, I'm not arguing that there was a defective meter. What my hard argument is is that they didn't establish whether there was or wasn't a defective meter. That's what I'm saying. I'm not saying the meter was defective. I'm saying that their conclusion or their evidence was by process of elimination, this must be it. All right? They did not establish that there could be other or eliminate other causes for this problem. That's all I'm saying, Your Honor. I'm not saying there was a defective meter at all. And I agree that we did not raise that issue in the court below. But I go, it was not our responsibility to do so. It was their responsibility to do so. They have to prove that there was a leak. We didn't do it. No other questions. Thank you. Thank you, Your Honor. Appreciate the court's time. We'll have time for a vote. Afternoon, Your Honors. Dave Fryder, the appellee. Let me first address the leak. The trial transcript is replete with leak evidence. The maintenance that there's a faulty meter is obviously fault because of the capping. The meter stopped completely. When the new pipe bent, it was capped right at the exterior wall of Wasabi. And then when the new pipe was installed and hooked up into Wasabi, the meter ran perfectly and normally. So, obviously, there's a leak up here or under the Wasabi slab. Justice Barberis asked a question to the opposing counsel, 800,000 gallons over what period of time? And he said, we don't know. In your brief, you say three months. Do we know what was three months or where did that come from? Yes, Your Honor. It comes from the water company stating the period of time with their bill. That's okay. It's in the record, though, that it comes from the water company. From the water company, they sent us a bill saying there's $6,188 of water that's been went through the meter for these three months. My note says December, February, through February. December of 2021 through February 2022. Was it time? Yes, Your Honor. So, to opposing counsel's point, there was never, for lack of a better word, there was never a wet spot discovered anywhere around this premises? No, it was under the slab. Now, when the excavation was done? Well, they just did an excavation in the bathroom. And then they went outside, capped it right by the exterior wall. It stopped, i.e., they found the leak must be on this side of the cap. And they attached the pipe. Wasabi then had water without a leak. They stopped working. I mean, we could have worked more and charged Wasabi more, but we fixed the leak. Gotcha. So, Justice Vaughn asked of a second pipe when new property was leased. We're not talking about the pipe that was capped and then repaired. That wasn't the second pipe that he was referring to. Well, to be honest, I don't think there's anything in the record about when the two lease units were consolidated by the tenant. And you're correct, this is a typical commercial lease. They didn't just come in and start operating. The Wasabi and their contractors regrouped the plumbing and other systems in the unit to make it a one unit because the water company demands, for some reason, that each tenant has one meter and one source of line in. And there's no other source, that line, that meter doesn't feed any other tenants. Sir, refresh my memory. Did the leak from December to February occur before or after the premises were combined and the plumbing was? It was combined by the tenant at the very beginning of the lease. This was a 10 year plus lease. Oh, okay. So it worked perfectly fine after that had been done until December of 22. Correct, Your Honor. All right, thank you. And whether it was faulty installation or pipe freezing or whatever, we don't know. But it was a leak, obviously, underneath the slab. Where the water went, how much of the dirt was washed away from the slab, we have no idea. But for right now, there's no cracks in the slab or anything like that. I'm not familiar with the area, but the name of the case is Shops at St. Clair, so I assume this is within municipality. There's streets and sidewalks and drainage and storm sewers and whatever. Yes, Your Honor. Yes, there is. So it's not? I mean, I don't know that the water traveled underground into a storm sewer somewhere. I mean, we really don't know. It's not in the record because you couldn't find it. Right. And when we corrected the leak, we stopped working. We stopped spending money. Right. Let's go to the interpretation of the contract, of the lease here. The lease term, the 1.2, yeah, Exhibit B obviously talks about all the construction before they moved in. The lease premises is 1.2, and it's all appurtenances specifically granted in this lease, is part of the lease premises. So these pipes are not outside of the lease premises. These pipes are not in the common areas. It falls, it does not fall in the purview of Section 6.1 being the duty of the landlord. Now, what's very important, the tenants bring up, one way or another, they reserve, except to the landlord, the right to replace pipes. Again, the word pipes comes in again. Well, why is that reservation there? Well, you know, it doesn't create a duty. It creates a right. And as the defendants had cited, the laws versus happy press lounge, absent moral language, a reservation of a right does not create a duty. But that is in there because under 6.1, we did not have the right to go in and do this, to go in and correct this leak, that the tenant was failing to pay for the water and failing to repair the leak, which also was a violation of 12.7, that they had to leave the premises in good operating order condition. Again, if it wasn't for that reservation, we would not have had the right. We'd have to sit there and, again, it's our property, and that's why this is in the lease because it's not covered by 6.1. This was a duty under 6.2 of the tenant, which we had a reservation of right to go in and do this work, which we thought was necessary and we did. And then we filed this lawsuit to get reimbursed for our damages. Before we get short on time, I want to jump to a different area for questioning. The damages, did you have a problem with the damages? What damages were ordered by the court? Did the court reduce the damages or exceed something, or was there a problem about that? Yes, at the end, because the judgment was for $52,000-some dollars, and then two days later, and I think both counsels, we do have notice of this. I know I discovered it when we got the record on appeal. It said, ah, you're over the Illinois Supreme Court Rule 222B, the $50,000 LM limit, so they reduced it to $50,000. But the interest alone on this judgment was a little over $5,900, so even the $52,000 number was fully within the jurisdiction of it. Did you cross-appeal on the damages issue, or are we stuck with the $50,000 we can't address? No, no, like you said, by the time I first read about it, I mean, we were all, you know, they had already filed their brief, and I was beginning to file my brief. So we can't address that, or that's beyond what we can address? Well, I think it could be addressed because, again, the notice of appeal is the appeal only of the decision of May 27th, which is the $52,000-some dollar judgment. So thus, you know, I feel that you do have authority and jurisdiction to affirm the full judgment of $52,000 and whatever that is. And those damages, including all the interest and attorney fees, penalties of whatever type, those are all provided for in the contract, the lease. Yes, Your Honor. And, in fact, let me take a picture. Okay. I'm never as organized as I thought I was. It was Plaintiff's Exhibit 16, Your Honor, under page E297, where I listed the sum of the $52,544 line item by line item, referring to the exhibit that justifies the $52,544, Your Honor. So I'm going to switch gears again back to where you were before we went to the damages. Section 1.2 of the contract of the lease, does that not define clearly that the pipes beneath the floor slab are part of the lease premises? Yes, I think it's clear that it's part of the lease premises. And that's, therefore, that translates to 6.1, where those pipes would be ours if it was outside of the lease premises or in common areas. And it's neither. And that's why 6.1 doesn't work. It's 6.2, it's a tenant's responsibility. And we only had the authority to come in and do this under the reservation of rights in 1.2, which clears up any argument, whether plumbing or pipes. Plumbing is pipes. Pipes is plumbing. I think in regular English terms, and also the Illinois compiled statutes also justify that. If there's no further questions, I think I've addressed all of the points discussed today. No further questions. Okay. Thank you, Your Honor. Thank you. Somebody's pen. May it please the Court. I'm not going to, once again, beat a dead horse unless the Court has any questions. I can be concluded. Okay. The only question I would ask you is the same thing I posed for Tim on the 1.2. Section 1.2 seems to clearly define that part of the leased premises are the pipes under this lab. In my reading of it, it seems to go to 6.2. Except, Your Honor, I would submit that 1.2 does indicate it's pipes outside the leased premises. Because it says within or below, I believe, the language in Section 1.2. So it does contemplate piping outside the leased premises, below the leased premises. Doesn't it clarify, though, somewhere in the lease that if the pipes serve only one premises, that that is the less source of the less eaten wasabi's responsibility? 6.2. All components exclusively serving the leased premises. Right. If it's a community main pipeline that serves several shops, not your responsibility. But if it's a pipe that only serves wasabi and it starts leaking, whether it's underground or outside or under the slab or wherever, if it only serves wasabi, isn't that your responsibility? Your Honor, again, I go back to the distinction between the language that's being used, the plumbing and pipes, in 1.2 and 6.2. The 6.2 does not refer to piping. And once again, I would submit to the court that the pipes that would be underneath the leased premises would be part of the infrastructure. And 6.2 does not, voiced upon the tenant, the obligation to take care of the infrastructure of the property. That would be my position on that. Thank you. You can't be blamed for flogging the dead horse. We forced you to beat the dead horse. It's been a while since I've ridden that horse, Your Honor. Thank you for the court's time. Okay, thank you. Thank you both for your briefs and your oral arguments today. I was hoping to take a matter of consideration on the issue of ruining a new horse.